UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
************************************
Ian B. Freeman, et al.              *
        Plaintiffs                  *
                                    *
v.                                  *     Case No. 1:20-cv-00963-LM
                                    *
City of Keene, et al.               *
        Defendants                  *
************************************
```

### MEMORANDUM OF LAW WITH EXHIBITS[1] IN SUPPORT OF MOTION TO DISMISS BY CITY OF KEENE

NOW COMES Defendant City of Keene ("City"), by it counsel Gallagher, Callahan, & Gartrell P.C., and submits this Memorandum of Law with Exhibits in support of its Motion to Dismiss pursuant to *Fed. R. Civ. P.* 12(b)(6).

### INTRODUCTION

Plaintiffs first seek a declaratory judgement to invalidate Ordinance O-2020-09-A, (the "Ordinance") (Count I). Plaintiffs specifically allege: 1) the City lacked the lawful authority to enact the Ordinance, and 2) the Ordinance is preempted by the "Governor's various Emergency Orders" *See* Compl. ¶ 125-26. City will address these claims in City's Argument I. Plaintiffs also allege that the Ordinance violates their constitutional rights. Plaintiffs plead a First Amendment free exercise of religion claim pursuant to 42 U.S.C. § 1983 (Count II); a First Amendment

---

[1] The Court may consider the attached City Exhibits A-G because when ruling on a motion to dismiss under Rule 12(b)(6) the Court may "consider not only the complaint but also facts extractable from documentation annexed to or incorporated by reference in this complaint and matters susceptible to judicial notice." *Rederford v. U.S. Airways*, Inc., 589 F.3d 30, 35 (1st Cir. 2009); *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993) (the First Circuit makes exceptions for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint").

1

freedom of speech claim pursuant to 42 U.S.C. § 1983 (Count III); a Fourteenth Amendment procedural due process claim (Count IV) pursuant to 42 U.S.C. § 1983; and a First Amendment right of assembly claim (Count V) pursuant to 42 U.S.C. § 1983. Additionally, Counts II, III, & V assert parallel violations of the New Hampshire State Constitution. Count II alleges a violation of Part 1, Art. 6 of the New Hampshire Constitution and Counts III and V allege violations of Part I, Art. 22 of the New Hampshire Constitution.[2] City will address Plaintiff's constitutional claims in City's Argument II.

This Court should dismiss all counts alleged against City in Plaintiffs' Complaint with prejudice: including Plaintiff's state constitutional claims.[3] As explained below, none of Plaintiffs' claims against City "state a claim upon which relief can be granted." *Fed. R. Civ. P.* 12(b)(6). The Court should award the City reasonable attorneys' fees to defend this action.[4]

## STATEMENT OF FACTS

On August 6, 2020 City passed the Ordinance into law. *See generally* City Ex. A. The Ordinance was adopted through the democratic process with a majority vote of the City Council, *see* City Ex. B, and signed into law by the Mayor of Keene. *See* City Ex. A. In addition to the vote and debate that occurred on August 6, 2020, there were public meetings that allowed for public comment including testimony by public health authorities. *See* City Ex. C and D. Over the

---

[2] Plaintiffs' Complaint stated Plaintiffs were "filing contemporaneously with this Complaint a Motion for a Temporary Restraining Order and/or Preliminary Injunction." Compl. n. 1. City has not been served with a Temporary Restraining Order and/or Preliminary Injunction, so they are not addressed in this memorandum. City respectfully opposes the granting of any emergency relief to Plaintiffs.

[3] City asks the Court to rule on all state- and federal-law claims because they are inextricably intertwined on factual and legal grounds. Ruling on all claims in this case would promote fairness, judicial economy, convenience, and comity. *See Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017).

[4] "In any action or proceeding to enforce a provision of sections . . . 1980, and 1981 of the Revised Statutes [42 U.S.C. §§ 1981–1983, 1985, 1986], . . . *the court, in its discretion, may allow* the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988 (emphasis added).

2

course of these public meetings, many Keene residents provided essential feedback regarding the proposed Ordinance, *see id.*, the proposed Ordinance reviewed by the City Council on August 6, 2020 reflected input from the community. *See* City Ex. A (the certified copy of the Ordinance shows legislative markups). All public meetings, including the ones discussed in this paragraph, were properly posted in advance on the City's website and links were provided allowing person to join the meeting. *See* City of Keene, *My City Government > Meeting Videos* available at https://ci.keene.nh.us/my-city-government/meeting-videos (last visited: Jan. 10, 2021) (showing all public meetings through March 25, 2021).

      The purpose of the Ordinance is to slow the spread of COVID-19. *See* City Ex. A § 66-170(a)-(h). The Ordinance recognizes that "COVID-19 has been determined to be a virulent infectious disease threatening the public health and welfare of the country, and including residents in the City of Keene." *Id*. § 66-170(a). The Ordinance further notes that "[t]he best means of slowing the spread of a virus is through minimizing close personal contact with individuals in a public environment, social distancing, covering the mouth and nose by wearing a proper face covering in a proper manner, and proper hand washing." *Id*. § 66-170(e). The City adopted the Ordinance to "minimize the threat to public health posed by the spread of communicable disease such as COVID-19 within the community." *Id*. § 66-170(h). The Ordinance "automatically and immediately terminate[s], without the necessity of further action by the City Council for the City of Keene, upon the termination of the COVID-19 State of Emergency by the Governor of the State of New Hampshire." *Id.* § 66-171(l). While the Ordinance mentions communicable disease, the automatic sunset provision of the Ordinance, makes clear that the Ordinance is limited in scope to New Hampshire's COVID-19 State of Emergency.

The Centers for Disease Control and Prevention ("CDC") has identified "Three Important Ways to Slow the Spread of COVID-19" and one such method is to "wear a mask to protect yourself and others and stop the spread of COVID-19." *See* CDC, *Things to Know about the COVID-19 Pandemic* (updated Jan. 5, 2021) available at https://www.cdc.gov/coronavirus/2019-ncov/your-health/need-to-know.html (last visited: Jan. 10, 2021). Additionally, one day before the City adopted its Ordinance, this Court signed ADM-1 Order 20-28 ("Order") prohibiting "persons who will not wear a mask or face covering that covers their noses and mouths" from entering the Rudman Courthouse or Cleveland Federal Building. (United States District Court for the District of New Hampshire, *ADM-1 ORDER 20-28*, D.N.H. (Aug. 5, 2020), available at https://www.nhd.uscourts.gov/pdf/ADM%201%2020-28.pdf (last visited Dec. 16, 2020)). The Order was enacted due to "public health and safety issues resulting from…COVID19." *Id*. The Order further noted that its requirements were "consistent with guidance from the Centers for Disease Control and Prevention (CDC) and other public health authorities." *Id*. It is undisputed that when the City passed its Ordinance, the CDC was and continues to recommend masking/face coverings to slow the spread of COVID-19.

Plaintiffs' Complaint refers to COVID-19 as a "*feigned* public health crisis." Compl. ¶ 2. Plaintiffs have not withdrawn their Complaint despite the fact that as of January 20, 2021, 59,437 citizens of New Hampshire have been infected with COVID-19 and 950 New Hampshire citizens have died due to COVID-19. New Hampshire Department of Health and Human Services*, New Hampshire 2019 Novel Coronavirus (COVID-19) Summary Report* (updated Jan. 21, 2021 at 9:00 AM) available at https://www.nh.gov/covid19/ (last visited: Jan. 21, 2021).

## STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b)(6), the court will "accept the well-pleaded facts as true, viewing factual allegations in the light most favorable to the plaintiff. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Rederford v. U.S. Airways*, Inc., 589 F.3d 30, 35 (1st Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (internal quotations and citations omitted).

A court ruling on a motion to dismiss under Rule 12(b)(6) may "consider not only the complaint but also facts extractable from documentation annexed to or incorporated by reference in this complaint and matters susceptible to judicial notice." *Rederford*, F.3d at 35; *Watterson v. Page*, 987 F.2d 1, 3–4 (noting that while courts ordinarily do not consider materials outside the complaint when reviewing a motion to dismiss under Rule 12(b)(6), the First Circuit makes exceptions for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint").

ARGUMENT

### I.     Court should Deny Plaintiffs' Request for Declaratory Judgement

Count I: City's Authority

Plaintiffs allege that "the City lacked the authority to enact [the Ordinance] because the state legislature did not expressly grant it any authority to enact an ordinance requiring citizens to wear face masks or coverings." Compl. ¶ 125. In *Cooper v. Sunnunu et al*, No. 2020-CV-00266 (N.H. Super. Ct. Jul. 13, 2020) (Colburn, J.), the New Hampshire Superior Court considered a nearly identical argument to the one Plaintiffs assert in the instant case regarding

5

the authority of municipalities to pass laws promoting the public welfare. *See* City Ex. E. The Plaintiff in *Cooper* alleged that the City of Nashua lacked lawful authority to enact a similar Ordinance to the one adopted by City. *See* City Ex. F (Nashua Ordinance). The Superior Court found that under New Hampshire law a municipality may enact an ordinance requiring the wearing of a face mask during a pandemic.

> Although there exists no express authority for a city to enact an ordinance requiring the wearing of face masks during a pandemic, RSA 47:17, XV gives the City the power to make any other bylaws and regulations which may seem for the well-being of the city so long as no bylaw or ordinance is repugnant to the constitution or laws of the state. Moreover, the governmental authority known as the police power is an inherent attribute of state sovereignty. The police power is broad and includes such varied interests as public health safety, morals, comfort, the protection of prosperity, and the general welfare. The express and implied powers granted to towns by the legislature must be interpreted and construed in light of the police powers of the state which grants them. As such, municipalities are empowered to make bylaws for a variety of purposes which generally fall into the category of health, welfare, and public safety.
>
> Here, it is obvious that the purpose of the Ordinance is to slow or prevent the spread of a highly contagious and deadly virus. **In other words, the Ordinance is clearly for the well being of the City's residents, visitors, and businesses. It follows that the Board of Aldermen was authorized to pass the Ordinance pursuant to RSA 47:17, XV as well as its general authority to enact laws protecting health, welfare, and public safety.**

*Cooper* at *4 (citations, quotations, and footnotes omitted) (emphasis added); City Ex. E. City adopts the above-quoted legal analysis of the New Hampshire Superior Court as its own argument for the proposition that City had authority to enact the Ordinance. Specifically City asserts that under RSA 47:17, XV "as well as its general authority to enact laws protecting health, welfare, and public safety," *Id*, the Ordinance does not exceed the City's authority.

6

Count I: Preemption

Plaintiffs' second argument for declaratory judgement is that "Governor Sununu's numerous Emergency Orders addressing the Coronavirus preempt [the Ordinance]." *See* Compl. ¶¶ 126-128. Plaintiffs further allege that the Governor's "Orders comprise a comprehensive regulatory scheme governing the state's response to the Coronavirus, and it demonstrates the state's intent to preempt the field by placing exclusive control in the state's hands."

The New Hampshire Supreme Court has articulated the preemption doctrine.

> The preemption doctrine flows from the principle that municipal legislation is invalid if it is repugnant to, or inconsistent with, state law. Preemption may be express or implied. Here, the plaintiffs' argument is based upon implied preemption, which may be found when the comprehensiveness and detail of the State statutory scheme evinces legislative intent to supersede local regulation. State law also impliedly preempts local law when there is an actual conflict between the two. A conflict exists when a municipal ordinance or regulation permits that which a state statute prohibits or vice versa. Moreover, even when a local ordinance does not expressly conflict with a state statute, it will be preempted when it frustrates the statute's purpose.

*Girard v. Town of Plymouth*, 172 N.H. 576, 585 (2019) (internal citations and quotations omitted).

The Plaintiff in *Cooper* also made the argument that the City of Nashua was preempted by the Governor's Emergency Orders. *Cooper* at *5 (City Ex. E). The New Hampshire Superior Court concluded that the Emergency Orders were not a "statutory scheme," but even if the Emergency Orders were a statutory scheme, the Nashua Ordinance was in alignment with the scheme. *Id*. at *5-6. Like the Plaintiff in *Cooper*, Plaintiffs in the instant case cite "no New Hampshire authority establishing that executive orders are the same as a 'statutory scheme' for the purposes of the preemption doctrine." *Id*. at *6. Additionally, the intent of the Ordinance is not to preempt any of the Governor's Executive Orders. *See* City Ex. A § 66-171(j) (discussing

7

preemption). Thus Plaintiffs have failed to plead sufficient factual information necessary to show that the Governor's Executive Orders establish a statutory scheme, and the Court should dismiss Plaintiffs' preemption claim.

However, even if the Court finds that the Governor's Executive Orders created a statutory scheme, Plaintiffs' preemption argument should be rejected because the Ordinance neither expressly conflicts with the Executive Orders, nor frustrates their purpose. Plaintiffs' Complaint claims to provide examples of alleged conflicts between the Ordinance and the Executive Orders, *See* Compl. § 128, however these examples fail to articulate any conflict between the Ordinance and Executive Orders. First, Plaintiffs cite a conflict between the Ordinance and Emergency Order 52. *See id*. Emergency Order 52 cites CDC guidance and states "the best way to prevent illness is to avoid being exposed to COVID-19 by taking the following steps:… [c]over your mouth and nose with a cloth face covering when around others." *See* State of New Hampshire: Office of The Governor Christopher T. Sununu*, Emergency Order* # 52 at *2, available https://www.governor.nh.gov/sites/g/files/ehbemt336/files/documents/emergency-order-52.pdf (last visited: Jan. 18, 2021). Plaintiffs further allege that Emergency Order 52 "merely..ask[s] customers to wear face masks or coverings, but it does not require them to do so." Compl. ¶ 126. While the Ordinance requires certain members of the public to wear a face covering while entering a business, City Ex. A § 171(a)-(c), the Emergency Orders do not preclude municipalities from adding stricter safety requirements. As the Superior Court noted, "if Governor Sununu intended to preempt all local control related to face coverings during this pandemic, he could have used language to that effect." *Cooper* at *5 (City Ex. E). Since the intent of the emergency orders as well as the Ordinance is to slow the spread of COVID-19, Plaintiffs' claim that the Ordinance frustrates the purpose of the Emergency Orders should be

rejected. The Ordinance is not preempted and the Court should deny Plaintiffs a declaratory judgement.

## II. The Ordinance is Consistent with the United States and New Hampshire Constitutions: City has not Violated Plaintiffs' Constitutional Rights

Count II: Free Exercise of Religion

Plaintiffs' free exercise of religion claim is entirely without merit because the Ordinance does not impact churches or any similar religious organizations: nowhere in the Ordinance is there any reference to churches or similar organizations. *See generally* City Ex. A. Further, comments in the legislative history demonstrate that the Ordinance specifically excludes churches or religious organizations. City Ex. C at *8 ("The City Attorney stated that he did not include churches, on purpose…he did not include churches because of the concern with the First Amendment overlay").

Even assuming, *in arguendo,* that churches are contained within definition of business, as defined by City Ex. A § 171(d), Plaintiffs' Complaint fails to plead with sufficient factual particularity that City has violated their constitutional right to free exercise of religion. Specifically Paragraph 135 of Plaintiffs' Complaint states the Ordinance:

> …violate[s] Plaintiffs' right to freely exercise their religious beliefs because it restricts them from engaging in church services, including those involving gatherings of more than 100 people, without wearing face masks or coverings, where such stringent restrictions do not exist on other secular businesses, such as airports, buses, trains, medical facilities, libraries, shopping malls, office environments, restaurants, factories, grocery stores, pharmacies, etc.

Compl. §135. This Ordinance does not concern churches or other religious organizations. Nothing in the Ordinance treats churches or religious gatherings any differently than secular businesses; the definition of business is defined in Ordinance § 66-171(d). City Ex. A § 66-

171(d). This definition of business treats religious organizations exactly the same as secular businesses. Additionally, in their Complaint, Plaintiffs do not allege that the City has disrupted or banned any of their religious traditions. *See generally* Compl. The City's Ordinance contains no one-hundred person limit on gatherings. *See generally* City Ex. A. This count should be dismissed as Plaintiffs have failed to plead sufficient facts supporting the notion that the City has interfered with their Free Exercise of Religion.

*In Binford, et. al. v. Sununu,* Merrimack Cty. Super. Ct., 217-2020-CV-00152 (March 25, 2020) (Kissinger, J.) (City Ex. G), the New Hampshire Superior Court ruled on a Free Exercise claim alleging violations of both the United States and New Hampshire Constitutions against the Governor for his emergency orders. The *Binford* Court summarized Supreme Court's free exercise jurisprudence.

> The Free Exercise clause of the First Amendment prohibits the government from seeking "to ban such acts or abstentions only when they are engaged in for religious reasons." *Emit Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990) (superseded by statute on different grounds as stated in *Holt v. Hobbs*, 574 U.S. 352 (2015)). That said, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Bablu Aye. Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

*Binford*, at *20 (City Ex. G). The *Binford* Court held that when a government action does not target religion and "is merely incidental to the neutral regulation and is otherwise reasonable given the limited duration of the order and public health threat facing the citizens of this State," *id.*, such government action does not violate a citizen's free exercise of religion. *Id*. The Ordinance's Statement and Intent section shows that the purpose of the statute is to reduce the spread of COVID-19 within the City of Keene. *See* Ex. A § 66-170(a)-(h). The Ordinance has nothing to do with religion and Plaintiffs' claim should be dismissed.

Finally the Ordinance is constitutional because it passes the *Lemon* test. "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.'" *Freedom From Religion Found. v. Hanover Sch. Dist.*, 626 F.3d 1, 9 (1st Cir. 2010) (citing *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971). The Ordinance has a secular legislative purpose. The Ordinance's Statement and Intent section shows that the purpose of the statute is to reduce the spread of COVID-19 within the City of Keene. *See* Ex. A § 66-170(a)-(h). The principal or primary effect of the statute is to mandate mask wearing in businesses and apartment complexes. *See id.* § 66-171(a)-(d). Finally, there is no excessive entanglement with religion as the Ordinance makes no distinction between religious and secular organizations within the City and both religious and secular organizations are treated identically. *See id.* § 66-171(d). The Court should dismiss Count II.

Count III: Freedom of Speech

Plaintiffs allege that masks prevent Plaintiffs from "using facial expressions and other facial mannerisms to express themselves." Compl. § 151. "Where ... a law regulates speech only incidentally, as a consequences of expressly regulating conduct, it will withstand first amendment scrutiny if, in its application to incidental speech, it is no more restrictive than a time, place, and manner regulation." *State v. Comely*, 130 N.H. 688, 691 (1988) (citing *United States v. O'Brien*, 391 U.S. 367, 376-77 (1968)). "If a restriction is content-neutral, it must satisfy a slightly less stringent test—it must be narrowly tailored to serve a significant government interest. *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746 (1989). Content-neutral restrictions, however, must also leave open ample alternative channels for communication. *Id.*" *Doyle v. Comm'r, New Hampshire Dep't of Res. & Econ. Dev.*, 163 N.H.

215, 221 (2012) On its face the Ordinance is clearly content-neutral, because it does not to prevent Plaintiffs from discussing specific content. Under both the United States and New Hampshire State Constitutions, content neutral restrictions on speech "must be narrowly tailored to serve a significant government interest." *State v. Lilley*, 171 N.H. 766, 781 (2019) (internal citations omitted). "The Court must determine whether the regulation: (1) is content-neutral; (2) narrowly serves a significant governmental interest; and (3) allows for other opportunities for expression." *Binford, et. al. v. Sununu,* Merrimack Cty. Super. Ct., 217-2020-CV-00152 at *17 (March 25, 2020) (Kissinger, J.) (City Ex. E) (internal citations and quotations omitted).

Plaintiffs' Complaint alleges that the Ordinance is not content-neutral. Specifically Plaintiffs allege that by forcing them to comply with the Ordinance, the City "expressly prevent[s] them from one type of expression that communicates that disagreement: *not* wearing a face mask or covering." Compl. § 151. Plaintiffs have failed to plead with sufficient factual particularity that the Ordinance is not content-neutral. In *State v. Lilley*, 171 N.H. 766, 781 (2019), *cert. denied*, 140 S. Ct. 858 (2020) the Defendants argued that a city ordinance prohibiting public nudity, including the exposure of the female breast, was unconstitutional. *Id*. at 766. One of the arguments the Defendants made was that because the ordinance specifically forbade them from exposing their nipples, the ordinance was a content-specific restriction on speech. *See id.* at 781. The Plaintiffs in the instant case make a nearly identical argument to the Defendants in *Lilley*, namely that a prohibition on conduct is a content-specific restriction on speech. The New Hampshire Supreme Court has explicitly rejected the logic underlying Plaintiffs' claim.

> There is nothing in the text of the ordinance itself that suggests that one group's viewpoint is to be preferred at the expense of others. It does not target nudity meant to advance women's rights or desexualize the female nipple. Rather, it prohibits all nudity, regardless of whether the nudity is accompanied by

> expressive activity. In that sense, the ordinance merely regulates the manner in which activities may be carried out in that they cannot be carried out in the nude. We, therefore, conclude that the ordinance is content-neutral.

*Id*. at 782. *Lilley* makes clear an ordinance can be content-neutral if it "merely regulates the manner in which activities may be carried out." *Id*. The holding in *Lilley* is also consistent with United States Supreme Court precedent. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 283, 120 S. Ct. 1382, 1388 (2000) (ruling that an ordinance prohibiting public nudity was content-neutral). This Court should follow the precedent of the New Hampshire and United States Supreme Courts and find that the Ordinance is a content-neutral.

The second step of the constitutional analysis is to determine whether the restriction is narrowly tailored to serve a significant government interest. *Binford,* at *19 (City Ex. E). "Courts have long held that public health, safety, and welfare constitute a significant government interest. *See e.q. Rubin v. Coors Brewin. Co.*, 514 U.S. 476, 485 (1995)" *Binford*, at *18 (City Ex. E). The purpose of the Ordinance is to slow the spread of COVID-19. *See* City Ex. A. § 66-170(a)-(h). "COVID-19 has been determined to be a virulent infectious disease threatening the public health and welfare of the country, and including residents in the City of Keene." *Id*. § 66-170(a). No reasonable trier of fact could find slowing the spread of COVID-19 is not a significant government interest. Further the City adopted the Ordinance to "minimize the threat to public health posed by the spread of communicable disease such as COVID-19 within the community." *Id*. § 66-170(h). The Ordinance is narrowly tailored because it will "automatically and immediately terminate, without the necessity of further action by the City Council for the City of Keene, upon the termination of the COVID-19 State of Emergency by the Governor of the State of New Hampshire." *Id.* § 66-171(l). In addition to the sunset provision, the Ordinance's masking requirement is limited in scope to cover situations in which it is likely that the citizens

of Keene will be in close contact with individuals outside of their immediate household. *See id*. § 66-171 (a)-(c). The Ordinance is narrowly tailored to serve a significant government interest

Finally, the Ordinance allows for "other opportunities for expression." *Comely*, 130 N.H. at 691. Plaintiffs are able to criticize the Ordinance in any public forum. The Keene City Government is democratically elected and representatives are accountable to the public. *See* City of Keene, *Keene City Carter: Section 3 — Municipal Elections* available at https://ci.keene.nh.us/my-city-government/keene-city-charter (last visited: Jan. 15, 2021). Plaintiffs have voiced their opposition to the Ordinance without restriction by the City. Clearly, this Ordinance allows for other opportunities for expression.  This Court should dismiss Count III for the foregoing reasons. The Ordinance is "(1) is content-neutral; (2) narrowly serves a significant governmental interest; and (3) allows for other opportunities for expression." *Infra*.

Count IV: Procedural Due Process

Plaintiffs claim that the Ordinance "deprive[s] Plaintiffs and other citizens of their privileges and liberty because [it] prevent[s] them from choosing whether or not to wear a face mask or covering." Compl. ¶ 158. Plaintiffs conclude the Ordinance violates their right to procedural due process under the Fourteenth Amendment to the United States Constitution." *Id*. ¶ 159.  Plaintiffs have failed to plead a due process violation with sufficient factual particularity. In *Garcia-Gonzalez v. Puig-Morales*, 761 F.3d 81, 88 (1st Cir. 2014), the First Circuit Court of Appeals outlined the law and analysis a court should consider with respect to a due process claim in this jurisdiction.

> The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Accordingly, "certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate

procedures." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). " '[T]he root requirement' of the Due Process Clause" is that an individual must be provided notice and an opportunity to be heard prior to being "'deprived of any significant property interest.' " *Id.* at 542, 105 S.Ct. 1487 (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)).

In evaluating a procedural due process claim under the Fourteenth Amendment, we must determine "whether [the plaintiff] was deprived of a protected interest, and, if so, what process was his due." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). Accordingly, "[t]o establish a procedural due process violation, the plaintiff 'must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived [him] of that interest without constitutionally adequate process.

*Garcia-Gonzalez v. Puig-Morales*, 761 F.3d 81, 88 (1st Cir. 2014).

Plaintiffs' claim that they have been stripped of a fundamental right "choosing whether or not to wear a face mask or covering." Compl. ¶ 158. Courts have not adopted a formulaic definition of a fundamental right and identifying fundamental rights "requires courts to exercise reasoned judgment in identifying interests of the person so fundamental that the State must accord them its respect." *Obergefell v. Hodges*, 576 U.S. 644, 664, 135 S. Ct. 2584, 2598 (2015) (internal citation omitted). The City strenuously denies that Plaintiffs have met their burden of establishing that they are being denied a fundamental right. However, even assuming, *in arguendo*, that Plaintiffs have been denied a fundamental right, there is no procedural due process violation because Plaintiffs received adequate constitutional process.

The Ordinance was adopted through the democratic process through a majority vote of the City Counsel, *see* City Ex. B, and signed into law by the Mayor. *See* City Ex. A. The City further repeats and incorporates all of the facts presented in the first paragraph of its "Statement of Facts," *infra,* showing that citizens of Keene had multiple opportunities to comment and provide feedback on the Ordinance. Plaintiffs have neither been denied a fundamental right nor

been denied constitutional adequate process. Plaintiffs have failed to plead a proper claim for a violation of Procedural Due Process, and this Court should dismiss Count IV.

Count V: Right of Assembly

Plaintiffs claim that that the Ordinance violates their constitutional rights under both the United States and State of New Hampshire Constitutions with respect to the Right of Assembly. The New Hampshire Supreme Court has held that Part I, Article 32 of the State Constitution

> guarantees the same right to free speech and association" as does the First Amendment to the Federal Constitution. Opinion of the Justices, 121 N.H. 434, 437 (1981). In interpreting Part I, Article 32, therefore, we rely upon federal cases interpreting the First Amendment to the Federal Constitution for guidance. *See Associated Press v. State of N.H.*, 153 N.H. 120, 140, 888 A.2d 1236 (2005).

*Opinion of the Justices (Voting Age in Primary Elections II)*, 158 N.H. 661, 667 (2009). Thus, as long as the City shows that Plaintiffs have failed to plead a proper cause of action with respect to their First Amendment claims, the City will prevail on the state count as a matter of law. The First Amendment of the United States Constitution states, "Congress shall make no law . . . abridging . . . the right of the people peaceably to assembly." Compl. ¶ 158. Further, "peaceable assembly for lawful discussion cannot be made a crime." *De Jonge v. State of Oregon*, 299 U.S. 353, 365, 57 S. Ct. 255, 260 (1937). There is nothing in Plaintiffs' Complaint alleging that Plaintiffs have been prohibited by City from gathering to discuss grievances. The only accusation that Plaintiffs assert with respect to Count V is that face coverings

> forbid [Plaintiffs] and other citizens from assembling and expressing their grievances in a clear way, or from using facial expressions and other facial mannerisms to do so. Further, they prevent them and other citizens from assembling to express their disagreement with the measures themselves because they expressly prevent them.

Compl. ¶ 164. The City has previously refuted the specific arguments made by Plaintiffs in Paragraph 164 of their Complaint in this memorandum in the section entitled "Count III:

Freedom of Speech." *Infra*. The City repeats and reincorporates all of its arguments in the above-mentioned section to rebut the specific allegations made by Plaintiffs in Paragraph 164 of Plaintiff's Complaint. The City respectfully asks this Court to dismiss Plaintiffs' Counts V for the reasons previously stated in this memorandum. Plaintiffs have failed to plead any facts against City in Count V that were not already alleged in Count III.

## CONCLUSION

For the reasons set forth above, City respectfully requests that this Court dismiss all counts against the City in Plaintiff's Complaint with prejudice. Additionally, City respectfully asks the Court to award City reasonable attorneys' fees necessary to defend itself in this action.

Respectfully submitted,

CITY OF KEENE
By Its Attorneys
GALLAGHER, CALLAHAN & GARTRELL, PC.

Dated:  January 22, 2021            By: /s/ Charles P. Bauer
                                    Charles P. Bauer, Esq. (NH Bar #208)
                                    Donald P. Reape, Esq. (NH Bar #272973)
                                    214 North Main St.
                                    Concord, NH 03302
                                    (603) 228-1181
                                    bauer@gcglaw.com / reape@gcglaw.com

## **LOCAL RULE 7.1**

I, Charles P. Bauer, hereby certify that I did not attempt to gain concurrence because this is a dispositive motion.

Dated:  January 22, 2021            By: /s/ Charles P. Bauer
                                    Charles P. Bauer, Esq. (NH Bar #208)

## **CERTIFICATE OF SERVICE**

      I, Charles P. Bauer, hereby certify that I have this date forwarded a copy of the foregoing to all counsel of record through the court's electronic filing system (ECF).

Dated:  January 22, 2021               By: /s/ Charles P. Bauer
                                               Charles P. Bauer, Esq. (NH Bar #208)